UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
SANTINO TOMAINO,

                              Plaintiff,           CV-03-3809
                                                      (TCP)(MLO)
  - against -

                                                       MEMORANDUM
LEOPOLD GASPARIK, individually, CHRIS        AND
I. BUDESA, individually, SHERYL SCHULTZ,    ORDER
individually and as an employee of the Town of
Southampton, TOWN OF SOUTHAMPTON,

                              Defendant(s).
----------------------------------------------------------X
PLATT, District Judge.

       This 42 U.S.C. §§ 1983 and 1988 action was brought by Santino Tomaino ("Plaintiff") against Leopold Gasparik ("Gasparik") individually, Chris Budesa ("Budesa") individually, Sheryl Schultz ("Schultz"), individually and as an employee of the Town of Southampton and the Town of Southampton (the "Town"), (collectively "Defendants"), for violation of his Fifth and Fourteenth Amendment rights, specifically, abuse of process. Following oral argument on Defendants' motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, on April 11, 2006, the Court granted Defendants' motions and dismissed Plaintiff's claims.

       Before the Court is a motion by Defendants Gasparik and Schultz for sanctions and attorney's fees pursuant to Rule 11 of the Federal Rules of Civil Procedure. For the following reasons, Defendants' motion is DENIED.

## **BACKGROUND**

       Plaintiff alleges that from August 1999 through January 2003, he

repeatedly requested the minutes of a Town Court proceeding, in which he was a party, from Schultz, a court reporter who, Plaintiff believes, works for the Town. Although Plaintiff paid Schultz for these transcripts in August 2000, Schultz never provided Plaintiff with a copy but instead sent the transcript to the office of his attorney, John Juliano, Esq, on May 11, 2001. In his attempts to procure these minutes, Plaintiff began sending a series of rude and harassing letters to both the Town Court and Schultz. Plaintiff admits that he made at least fifty (50) requests for these minutes, either in person, by telephone or by mail. Finally, on January 26, 2003, at about 10:30 a.m., Plaintiff "visited" Schultz at the home she shares with Gasparik, a retired State Trooper and Schultz's fiancé. Gasparik opened the door, and Schultz recognized Plaintiff's voice and heard Plaintiff ask for her in an agitated tone. Gasparik went outside onto the front porch of the house and closed the door behind him. According to Gasparik, Plaintiff uttered a string of obscenities and demanded transcripts from Schultz, stating in substance, "I want my fucking transcripts." After a heated exchange, while Plaintiff's wife sat in Plaintiff's car, Plaintiff drove off screaming and cursing at Gasparik. Schultz, although she was unable to hear the words exchanged between Plaintiff and Gasparik, was extremely frightened and alarmed given the increasingly aggressive manner in which Plaintiff had demanded transcripts from her and the fact that Schultz did not use her home address professionally and was unsure of how Plaintiff had learned where she resided.

After Plaintiff left Schultz's and Gasparik's home, the latter two

Defendants placed a call to the State Police barracks to file a report against Plaintiff. Budesa Aff. at ¶ 3. Defendant Budesa, a State trooper, received the call and traveled to Schultz and Gasparik's home. Budesa Aff. at ¶ 4. Budesa interviewed Schultz and Gasparik and recorded their statements onto supporting deposition forms. Budesa Aff. at ¶ 5, 6. Budesa then returned to his barracks and completed a criminal information based upon the supporting depositions. Budesa Aff. at ¶ 7. The criminal information was then submitted to the local criminal court, the Town of Southampton, Justice Court. Budesa Aff. at ¶ 8.

Thereafter, the local criminal court issued a summons, charging Plaintiff with two counts of Harassment in the Second Degree and directing him to appear at the local criminal court. Logue Aff., Exh. 3. On April 21, 2005 and April 26, 2005, in the Town of East Hampton, Justice Court, Plaintiff was tried on the criminal charges stemming from his January 26, 2003 "visit" to Schultz's home. During the criminal trial, both Plaintiff and his wife testified. Plaintiff testified that Gasparik approached Plaintiff and began cursing once Gasparik learned Plaintiff's identity; that Plaintiff went to Schultz's home to pick up the minutes, which he believed would be waiting for him at Schultz's home; and that Plaintiff learned Schultz's home address from another court reporter, whose name he did not remember. The Town Court Justice who presided over the trial did "not credit the [Plaintiff] and Mrs. Tomaino's version of the events of January 26, 2003." People v. Tomaino, Docket No. 05020366, Town of East Hampton, Justice Court, April 28, 2005. On April 28, 2005, Plaintiff was found guilty of

Defendants placed a call to the State Police barracks to file a report against Plaintiff. Budesa Aff. at ¶ 3. Defendant Budesa, a State trooper, received the call and traveled to Schultz and Gasparik's home. Budesa Aff. at ¶ 4. Budesa interviewed Schultz and Gasparik and recorded their statements onto supporting deposition forms. Budesa Aff. at ¶ 5, 6. Budesa then returned to his barracks and completed a criminal information based upon the supporting depositions. Budesa Aff. at ¶ 7. The criminal information was then submitted to the local criminal court, the Town of Southampton, Justice Court. Budesa Aff. at ¶ 8.

Thereafter, the local criminal court issued a summons, charging Plaintiff with two counts of Harassment in the Second Degree and directing him to appear at the local criminal court. Logue Aff., Exh. 3. On April 21, 2005 and April 26, 2005, in the Town of East Hampton, Justice Court, Plaintiff was tried on the criminal charges stemming from his January 26, 2003 "visit" to Schultz's home. During the criminal trial, both Plaintiff and his wife testified. Plaintiff testified that Gasparik approached Plaintiff and began cursing once Gasparik learned Plaintiff's identity; that Plaintiff went to Schultz's home to pick up the minutes, which he believed would be waiting for him at Schultz's home; and that Plaintiff learned Schultz's home address from another court reporter, whose name he did not remember. The Town Court Justice who presided over the trial did "not credit the [Plaintiff] and Mrs. Tomaino's version of the events of January 26, 2003." People v. Tomaino, Docket No. 05020366, Town of East Hampton, Justice Court, April 28, 2005. On April 28, 2005, Plaintiff was found guilty of

one count of Harassment in the Second Degree in relation to Schultz but not guilty of the count of Harassment in the Second Degree in relation to Gasparik.

**DISCUSSION**

In connection with their motion for summary judgment, Gasparik and Schultz essentially argued that Plaintiff had failed to state a claim and that the inconsistencies in their testimony at Plaintiff's criminal trial did not create a material issue of fact in the instant case. The Court agreed and granted Gasparik's and Schultz's motion for summary judgment.

For these same reasons, Defendants Gasparik and Schultz have moved for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure and for attorney's fees. The gravamen of Defendants' request for sanctions and fees is the assertion that had Plaintiff awaited the resolution of the criminal charges, the instant case would never have been filed. Defendants assert that sanctions and fees are warranted in that despite the preclusive effect of Plaintiff's criminal conviction, he continued to urge the Court to reject Defendant's version of the events testified to in the Justice Court by presenting this Court with factual and legal inaccuracies and misrepresentations.

The imposition of sanctions pursuant to Rule 11 is a drastic measure within the sound discretion of the court. Knipe v. Skinner, 19 F.3d 72, 78 (2d Cir. 1994). Courts are not to use hindsight in determining whether sanctions are warranted but rather are required to consider what was known at the

time of filing.  Cohen v. Bane, 853 F. Supp. 620, 629 (E.D.N.Y. 1994).

Rule 11(b) provides, in relevant part, that sanctions may be awarded against an attorney who submits papers to the court containing "claims, defenses, and other legal contentions that are not warranted by existing law" or makes a "frivolous argument for the extension, modification, or reversal of existing law." Fed. R. Civ. P. 11(b)(2).  The Rule also provides that sanctions may be imposed where papers are presented for an "improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Fed. R. Civ. P. 11(b)(1).

In determining whether sanctions are warranted, the Court must focus not upon the attorney's subjective good faith belief, but upon whether his or her conduct was objectively reasonable under the circumstances.  Business Guides v. Chromatic Communications Enters., Inc., 498 U.S. 533, 551 (1991).  In cases "where it is clear that a party's attorney should have known that there was absolutely no possibility of prevailing on the merits given the precedent against the claims, sanctions are necessary to deter such counsel from wasting the time and resources of the adversaries as well as the court." Cohen v. Bane, 853 F. Supp. 620, 629 (E.D.N.Y. 1994) (citation omitted).

The record is insufficient to conclude that Plaintiff's claims were presented for an "improper purpose, such as to harass or cause unnecessary delay or needless increase in the cost of litigation" as is required for a Rule 11(b)(1) violation.  Thus, the Court limits its consideration of Defendants' motion to Rule

time of filing.  Cohen v. Bane, 853 F. Supp. 620, 629 (E.D.N.Y. 1994).

Rule 11(b) provides, in relevant part, that sanctions may be awarded against an attorney who submits papers to the court containing "claims, defenses, and other legal contentions that are not warranted by existing law" or makes a "frivolous argument for the extension, modification, or reversal of existing law." Fed. R. Civ. P. 11(b)(2).  The Rule also provides that sanctions may be imposed where papers are presented for an "improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Fed. R. Civ. P. 11(b)(1).

In determining whether sanctions are warranted, the Court must focus not upon the attorney's subjective good faith belief, but upon whether his or her conduct was objectively reasonable under the circumstances.  Business Guides v. Chromatic Communications Enters., Inc., 498 U.S. 533, 551 (1991).  In cases "where it is clear that a party's attorney should have known that there was absolutely no possibility of prevailing on the merits given the precedent against the claims, sanctions are necessary to deter such counsel from wasting the time and resources of the adversaries as well as the court." Cohen v. Bane, 853 F. Supp. 620, 629 (E.D.N.Y. 1994) (citation omitted).

The record is insufficient to conclude that Plaintiff's claims were presented for an "improper purpose, such as to harass or cause unnecessary delay or needless increase in the cost of litigation" as is required for a Rule 11(b)(1) violation.  Thus, the Court limits its consideration of Defendants' motion to Rule

11(b)(2).

The Advisory Committee Notes to Rule 11 indicate a number of factors that courts may consider in deciding whether to impose monetary sanctions. These include whether the conduct was willful or negligent; whether it was part of a pattern of activity, or an isolated event; whether it infected the entire pleading, or only one particular count or defense; whether the person has engaged in similar conduct in other litigation; whether it was intended to injure; what effect it had on the litigation process in time or expense; whether the responsible party is trained in the law; what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; and what amount is needed to deter similar activity by other litigants. In light of these factors, the Court declines to impose sanctions against Plaintiff's counsel.

As Plaintiff's amended complaint only alleges a single cause of action pursuant to Section 1983, many of the above factors are irrelevant. Other than arguing to the Court that Plaintiff maintained the action despite his inability to controvert the testimony found to be credible at Plaintiff's criminal trial, Defendants present the Court with few grounds to support the imposition of sanctions. Moreover, Defendants repeatedly make reference to the preclusive effect of Plaintiff's criminal conviction without directing the Court to a single case that held a criminal conviction to preclude a claim of abuse of process. Without citation to established precedent, Defendants' argument that Plaintiff's

complaint is frivolous is seriously weakened. Although the Court agreed that Plaintiff's complaint lacked merit, the Court remains of the opinion that Rule 11(b)(2) has not been violated and thus sanctions are not warranted.

A further issue for the Court's consideration involves Defendants' request for attorney's fees. It is well-settled in this Circuit that the party seeking reimbursement of attorneys' fees bears the burden of proving the reasonableness and necessity of hours spent and rates charged. See generally, New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136 (2d Cir. 1983). To this end, a fee application must be supported by contemporaneous time records that describe with specificity, by attorney, the nature of the work done, the hours expended, and the dates. Id. at 1147-48. This requirement has been extended to include attorneys' fees sought pursuant to Rule 11. Kahn v. Taco Bell Corp., 1993 WL 404099, at *1 (S.D.N.Y. Oct. 4, 1993) (citing Sadler v. Skyview Owners Ass'n, 1992 WL 226929, at *3 (S.D.N.Y. Sept. 3, 1992)).

Defendants assert that they have incurred over $59,000 in fees in connection with this litigation. (Def.'s Fees Mem. at 17). In support of this assertion, Defendants' counsel attaches purported time sheets documenting the time spent in connection with this case. He alleges that his hourly rate was $450 per hour but does not attach a retainer agreement. Also, he notes the initial retainer as $2500 (enough for just over five and a half hours of work). The time sheets (attached hereto) include a charge of $450 per hour for expenses which would necessarily include travel time and administrative costs, presumably not

billed at $450 per hour. In addition, a quick perusal of the time sheets indicates a total of 8.75 hours of telephone conferences with the Assistant District Attorney assigned to the criminal charges against Plaintiff, namely two counts of the violation of Harassment in the Second Degree. The Court notes that violations are akin to summonses for traffic violations. Such a claim is simply ridiculous - the entire criminal case was probably tried in less time. For these reasons, the Court believes that Defendants' counsel's application for fees is overstated, inaccurate, and thus disingenuous, and hence rejected by the Court.

## **CONCLUSION**

For the foregoing reasons, Defendants' motion for sanctions pursuant to Rule 11 and for attorney's fees is hereby DENIED.
SO ORDERED.

                                                                      s/s Thomas C. Platt
                                                                      Thomas C. Platt, U.S.D.J.

Dated: Central Islip, New York
        May 12, 2006